# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 22-cv-02502-PAB-NRN

LACY BROWN, on behalf of herself and others similarly situated,

 Plaintiff,

v.

ARCHULETA COUNTY, BOARD OF COUNTY COMISSIONERS,

WARREN BROWN, in his official capacity as Archuleta County Commissioner,

RONNIE MAEZ, in his official capacity as Archuleta County Commissioner,

 Defendants.

---

## FIRST AMENDED COMPLAINT AND JURY DEMAND

---

### I. INTRODUCTION

Comes now the Plaintiff, Lacy Brown ("Plaintiff"), on behalf of herself and all others similarly situated, hereinafter described, by and through her undersigned counsel, Albrechta & Albrechta, LLC, Tod J. Thompson, Attorney at Law, and Albrechta & Coble, Ltd., and submits her First Amended Complaint pursuant to Fed.R.Civ.P. 15(a)(1)(B) against Defendants Archuleta County, Board of County Commissioners and Commissioners Warren Brown and Roonie Maez in their official capacities (collectively the "County") for damages and other relief relating to violations of Title VII of the 1964 Civil Rights Act, ("Title VII"), Division E of the FFCRA ("Families First Coronavirus Response Act") the Emergency Paid Sick Leave Act ("EPSLA") which expanded the Fair Labor Standards Act (FLSA), and Division C of the FFCRA the

Emergency Family Medical Leave Expansion Act ("EFMLEA") which expanded the Family Medical Leave Act ("FMLA") and she hereby states:

1. This action has two components. The first consists of Ms. Brown's individual claims against the County and its Commissioners for retaliation against Ms. Brown for engaging in the protected activity of reporting sexual harassment to the County and for complaining about the unlawful requirements to earn a bonus. The second is a collective and class action instituted by Plaintiff because of Defendants' policy and practice of not paying certain county employees a $2,000.00 bonus, including Plaintiff, who took leave during the COVID pandemic that was mandated by County policy and protected by federal law.

2. To pursue claims under the FLSA, as amended and expanded by the EPSLA portions of the FFCRA, aggrieved persons are not permitted to institute "Rule 23" class actions, but rather are required to institute a "collective action" pursuant to §216 of the FLSA. Collective actions require individuals to "opt in" to the litigation.

3. This is a collective action under the FLSA as amended by the EPSLA provisions of the FFCRA for: (a) failure to pay a county-wide bonus to employees who took federally protected leave under the FFCRA; (b) liquidated damages; (c) punitive damages and compensatory damages; (e) attorney fees; and (f) such other relief as may be appropriate.

4. This is a class action under the FMLA as amended by the EFMLEA provisions of the FFCRA, for: (a) failure to pay a county-wide bonus to employees who took federally protected leave under the FFCRA; (b) liquidated damages; (c) punitive and compensatory damages; (d) attorney fees and costs; and (e) such other relief as may be appropriate.

## II.   NATURE OF CLASS AND COLLECTIVE ACTION

5. Plaintiff brings this action on her own behalf, and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by the Defendant's unlawful conduct pursuant to 29 U.S.C. §216(b) for the EPSLA portion of First Claim for Relief and Rule 23, F. R. Civ. P. as to the EFMLEA portion of First Claim for Relief.

6. The "class" which Plaintiff seeks to represent and for whom Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiff is herself a member, is composed of and defined as follows:

> All persons, male and female, who were employed by Defendant, ARCHULETA COUNTY, BOARD OF COUNTY COMISSIONERS, from on or before March 16, 2020 until on or after September 07, 2021, who were denied a $2,000.00 bonus issued by Defendant, ARCHULETA COUNTY, BOARD OF COUNTY COMISSIONERS, on or about September 07, 2021, because they took Emergency Paid Sick Leave or Emergency Family Medical Leave pursuant to the FFCRA.

7. Plaintiff is unable to currently state the exact size of the potential class but, upon information and belief, avers that each exceeds 20 persons. The class is so numerous that joinder of all members is impracticable. Written consents will be filed as additional opt-in plaintiffs elect to join the collective under the FLSA.

8. As set forth herein, this class action meets the requirements for being maintained and prosecuted as a class action and collective action in that Plaintiff and opt-in plaintiffs are all similarly situated as all putative class and collective members have been deprived of a bonus because they took federally protected leave under the FFCRA through the EPSLA or EFMLEA. Despite their specific job titles, departments, or the specific type of leave they took under the FFCRA Defendants treated all the class and collective members the same and violated their rights

to not be retaliated against for taking federally protected leave. All class and collective members share a common issue of law and fact. *Turner v. Chipotle Mexican Grill, Inc.*, 123 F. Supp. 3d 1300 at 1309 (D. Colo. 2015).

9. Plaintiff will fairly and adequately represent and protect the interests of the members of the class. The interests of the representative and the interests of all class members are aligned. Plaintiff is attempting to benefit all class members. Plaintiff shares the same interest as each class member – full and fair compensation for damages resulting from Defendants' misconduct. The fact that Plaintiff's claims are typical of the claims of the class ensures that Plaintiff will preserve the interest of all class members. Plaintiff does not have any interest that competes with the interests of other class members because by pursuing her own interest, Plaintiff advances the interests of the entire class. There are no potential conflicts of interest between the proposed class representative and the members of the class. The claims of all members of the class arise from a similar fact pattern and are based upon identical theories of law.

10. The allegations by Plaintiff contain common questions of law and fact. Plaintiff satisfies the requirement of Rule 23(a)(2) that the litigation involve "questions of law or fact common to the class." In the present case, the common issues of law and fact are abundant. Specifically, there are common questions of fact regarding Defendants' conduct and representations, such as:

   a. Have Defendant wrongfully withheld a bonus from employees who took federally protected leave?

   b. Has the class been injured by Defendant's policy which punished employees who took federally protected, and county mandated, COVID leave during the pandemic?

  c. Did Defendant's practice and conduct amount to retaliation against those employees who took federally protected COVID leave during the pandemic?

  d. Was Defendant's conduct willful and/or undertaken with such disregard and recklessness as to allow the class to recover liquidated and/or punitive damages?

11. Plaintiff's claims focus entirely on Defendant's wrongful conduct and thus are typical of the claims of the class. Plaintiff asserts claims involving specific actions taken by Defendant affecting the entire class. Consequently, Plaintiff meets the typicality requirement because her claims arise from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theories.

12. Additionally, a class action and collective are the preferred and proper basis to proceed upon these claims as prosecution of separate individual claims could pose a risk of inconsistent or varying outcomes as to the claims of more than twenty (20) individual claims that would establish inconsistent standards of conduct relative to the Defendants' compensation policies, actions and practices and disposition of this matter would be dispositive of the interests of all other County employees who did not receive the compensation at issue in this matter.

13. Moreover, the Defendants' conduct in refusing to pay compensation to employees that took federally protected, and county mandated, COVID leave during the pandemic, **predominated** over any questions affecting individual members of the proposed class or collective. The class /collective claims seek only those remedies in failure to pay bonus compensation in an amount set by Defendant. Adjudication of this matter is superior to any other method for the fair and efficient adjudication of the controversy in question.

## III. JURISDICTION AND VENUE

14. This is a "collective" action authorized by and instituted under the FLSA.

15. Count I of the Complaint is based on federal law. As to Count I, this Court has jurisdiction pursuant to 28 U.S.C. §1331.

16. Written consents to join this action as to the EPSLA portion of First Claim for Relief, as and when executed by other individual plaintiffs, will be filed pursuant to §16(b) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201 *et seq*.

17. This Court holds supplemental jurisdiction over Second Claim for Relief, pursuant to 28 U.S.C. §1367, on the grounds that it is so related to First Claim for Relief, over which the Court has original jurisdiction, that it forms part of the same case or controversy.

18. Plaintiff was employed in this District and a substantial amount of the conduct giving rise to Plaintiff's claims occurred within this District. Thus, venue properly lies within the United States District Court for the District of Colorado, pursuant to 28 U.S.C. §1391(c).

## IV. PARTIES

19. Plaintiff, Lacy Brown, is an adult woman who was employed by the County from November 2011 until October 24, 2021 and is a citizen of Pagosa Springs, Archuleta County, Colorado.

20. Plaintiff is a covered and eligible employee under the Families First Coronavirus Response Act (FFCRA, FFCRA, Division E, §§ 5105 to 5111 (Pub. L. No. 116-127)) and under Expanded Family Medical Leave (EFMLEA, 29 U.S.C. §§ 2611(2) and 2620).

21. Defendant Archuleta County is a local Colorado government entity with its principal place of business located at 398 Lewis Street, Pagosa Springs, Archuleta County, Colorado.

22. Defendant Warren Brown (hereafter "Commissioner Brown") in his official Capacity as an Archuleta County Commissioner. In his official capacity, Commissioner Brown approved the payment of a COVID Bonus to award employees who had not taken any COVID leave and to punish those who did.

23. Defendant Ronnie Maez (hereafter "Commissioner Maez") in his official capacity as an Archuleta County Commissioner is, and at all times material to this action was, an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d). In his official capacity, Commissioner Brown approved the payment of a COVID Bonus to award employees who had not taken any COVID leave and to punish those who did.

24. The County and Commissioners Brown and Maez, in their official capacities, are covered as an employer as defined by the EPSLA section of the FFCRA (§5102, 134 Stat. 195 and 29 U.S.C. § 203) and is an "employer" under the EFMLEA (§3102, 134 Stat. 189 amending 29 U.S.C. §2620).

## V. ADMINISTRATIVE PROCEDURES

25. More than thirty days prior to the institution of this lawsuit, Plaintiff filed a charge of discrimination with the Colorado Civil Rights Division (CCRD), which was dually filed with the Equal Employment Opportunity Commission (EEOC), alleging Defendant's violations of Title VII and CADA.

26. The CCRD provided Defendant with a notice of the charge of discrimination.

27. The CCRD investigated the charge of discrimination.

28. Because more than 180 days passed since the charge was filed and because Plaintiff requested her right to sue letter, her charge was dismissed by the CCRD and EEOC without issuing a determination. The CCRD issued a notice of right to sue against Defendant Archuleta County on June 29, 2022. The EEOC issued a notice of right to sue on July 28, 2022.

29. All administrative remedies and conditions precedent to the institution of this lawsuit have been exhausted and fulfilled.

## VI. STATEMENT OF FACTS

30. Plaintiff began working for the County in 2011.

31. Plaintiff's final job position with the County was as a Caseworker Supervisor in the Department of Human Services.

32. In March 2020, the COVID-19 pandemic swept through Colorado, initiating shutdowns, lockdowns, and closures of public and private companies and schools.

33. Congress passed the FFCRA in response to the growing public health emergency posed by COVID-19 and the global pandemic that it caused. President Trump signed the FFCRA into law on March 18, 2020 and it became effective on April 1, 2020. Congress then passed the CARES Act which the President signed into law on March 27, 2020 and was effective immediately.

34. On November 16, 2020 Plaintiff submitted a Leave Claim Form for the pay period of November 1, 2020 through November 14, 2020 checking qualifying boxes under the heading "Emergency Sick Leave: 80 Hours TOTAL Granted", referencing leave granted under the EPSLA section of the FFCRA.

35. Ultimately, Plaintiff never tested positive and returned to work as quickly as she could.

36. Plaintiff's pay stub for that pay period reflected 6.5 hours of "EPSLA 100%".

37. Defendants paid Plaintiff her normal hourly rate for the 6.5 hours she took pursuant to the EPSLA.

38. Between August 24, 2021, and September 7, 2021 the County considered a resolution to issue a "COVID Essential Worker Incentive Pay" (the "COVID Bonus"), which was a $2,000.00 bonus to all current County employees who were employed through the pandemic.

39. On September 7, 2021, the BOCC approved the COVID Bonus.

40. The Agenda for the September 7 meeting explains the bonus as follows:

   a. "This item is to award county employees **who did not use any of their allocated COVID leave pay**. Employees eligible for this pay must have been employed with Archuleta County on or before March 16, 2020, and must be a current employee. The pay would be $2,000 for full-time employees and pro-rated for part-time employees." [emphasis added]

41. The Minutes for the September 7 meeting state:

   a. "Commissioner Brown moved to approve payment to county employees who did not use their allocated COVID leave pay as presented, and direct the Finance Department to work with the Human Resources Administrator to determine eligible payees, amounts and funding sources. Commissioner Maez seconded the motion. Commissioners Borwn and Maez voted Aye and Commissioner Schaaf voted Nay."

42. The County's finance department was instructed to create a spreadsheet where eligible county employees (based on dates of employment) were listed along with any leave that they took during COVID. Any employees who took leave under the FFCRA, including EPSLA or EFMLEA, were immediately disqualified from receiving the bonus.

43. Per the County's Agenda and Minutes, those employees who did not take any leave to which they were entitled under the FFCRA were rewarded with additional compensation in a defined amount in the form of a bonus.

44. Sometime after the approval of the COVID Bonus, Plaintiff learned that she would not be receiving the bonus because she took 6.5 hours of paid sick leave as allocated and protected under the FFCRA.

45. On September 15, 2021, Plaintiff emailed the County's Human Resources representative, Ms. Woodman, asking to meet about the COVID Bonus.

46. On the same day, Plaintiff also emailed her elected officials, the County, and the County Administrator asking them to reconsider giving her the COVID Bonus because she took EPSLA leave pursuant to the County's own policies which stated that you could not come to work if you were exhibiting symptoms during the height of the pandemic.

47. The County Administrator, Mr. Scott Wall, sent an email to Plaintiff's direct supervisor stating that her email to the County was inappropriate and that he should, "handle it."

48. Upon receiving this email Mr. Dodson called Mr. Wall to learn how he was supposed to handle it.

49. During this call, which was on speaker phone, Plaintiff passed by Mr. Dodson's office and heard her name. She entered the office and listened to the rest of the call.

50. During this call Mr. Wall stated that he would never meet with Ms. Brown alone because she had a bad reputation around town. He also stated that if he knew she was so unprofessional that he would never have approved her raise the previous year.

51. Mr. Wall also made offensive comments about Mr. Dodson, a homosexual man.

52. On the afternoon of September 15, 2021, Ms. Woodman in HR responded to Plaintiff's concerns about the COVID Bonus and stated that the County had already voted on and approved

the COVID Bonus and she did not expect them to make any amendments to the requirements to receive the payment.

53. On the next day, September 16, 2021, Mr. Dodson sent an email to Ms. Woodman in HR stating that Plaintiff intended to file a complaint about Mr. Wall's sexual harassment. Plaintiff reported to HR that Mr. Wall had created a hostile work environment.

54. Plaintiff and Mr. Dodson were clear that they intended to file formal complaints. HR encouraged them to wait a couple days to cool down.

55. Later that morning, Ms. Woodman met with Mr. Dodson and Plaintiff.

56. On September 17, 2021, the County accepted Mr. Wall's voluntary resignation, which included a generous payout of his contract.

57. Mr. Wall was never formally reprimanded and was allowed to resign on his own terms and was paid to do so.

58. On September 21, Plaintiff emailed HR her formal written complaint against Mr. Wall.

59. Plaintiff was told by HR that nothing further was going to be done because Mr. Wall had already resigned leaving nothing for the County to address.

60. On October 11, 2021, Mountain States Employers Council began an internal investigation, supposedly into the complaints about Mr. Wall.

61. On October 13, 2021, Ms. Woodman emailed Plaintiff a copy of the Notice of Investigation.

62. Plaintiff was confused because the last she had been told there was not going to be any follow up to her complaint because of Mr. Wall's resignation.

63. Ms. Woodman informed Plaintiff that the County had unanimously agreed to move forward with the investigation despite Mr. Wall's voluntary resignation.

64. Plaintiff felt like the County was out to get her. She was getting mixed messages and she felt like the script was being flipped and that she was now being investigated instead of her complaints against Mr. Wall. She felt as though all of this stemmed from her initial email to the County challenging the terms of the COVID Bonus and because she was responsible for the resignation of their County Administrator.

65. Based on information and belief, Ben Fox submitted a complaint against Plaintiff which allowed the investigation to be re-directed from Mr. Wall's conduct to Plaintiff's alleged conduct was coerced, or at least encouraged, to make the complaint against Plaintiff by an agent or employee of the County.

66. On October 18, 2021, Plaintiff made the difficult decision of submitting her voluntary resignation with her last day of work scheduled for October 29, 2021.

67. Plaintiff was forced to voluntarily resign her position because her working conditions had become so intolerable and she felt that her termination was imminent.

68. The investigation went forward and was in fact aimed at the employees who had submitted complaints against Mr. Wall, both of whom were ultimately terminated after each of them submitted a voluntary resignation.

69. Despite Plaintiff's resignation, the County completed a Corrective Action/Progressive Disciplinary Action form terminating her employment on October 24, 2021 for her alleged conduct during a group building exercise with a skeleton made out of cookies.

70. The first termination notice explained that even though she had already tendered her resignation, her employment status was to be classified as terminated and not eligible for re-hire.

71. Then the County fired her again (!) on October 29, 2021, in response to an email she sent on her last day at work.

72. Defendants retaliated against Plaintiff, and others similarly situated, for taking protected sick leave under the FFCRA by preventing her and others from receiving a county-wide bonus because they afforded themselves of federally allocated and protected leave during the pandemic.

73. Defendants retaliated against Plaintiff for challenging the County's reasoning behind excluding those who took FFCRA leave from the bonus.

74. The County acted under a scheme to retaliate against anyone who took federally allocated and protected leave during a global pandemic through this retroactive punishment.

75. Finally, Plaintiff was retaliated against for submitting written and oral complaints about Mr. Wall's sexual harassment of her by using an investigation to terminate her twice after she had already resigned.

## VII. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
(Class and Collective Action for Retaliation and Discrimination in violation of the FFCRA – Division C §§ 3101-3106, 135 Stat. at 189-192 and Division E §§ 5101-5111, 134 Stat. at 195-201)

76. Plaintiff reasserts and realleges the allegations set forth in the above paragraphs.

77. Plaintiff and similarly situated employees engaged in protected activity under the FFCRA by requesting, taking, and being granted leave under the EPSLA and EFMLEA divisions of the FFCRA during the pandemic.

78. Plaintiff and similarly situated employees engaged in protected activity under the FFCRA by challenging the County's decision to withhold the COVID Bonus from any employee who took federally protected leave under the FFCRA during the pandemic.

79. Plaintiff and similarly situated employees engaged in protected activity under the FFCRA by taking leave pursuant to the EPSLA and EFMLEA sections of the FFCRA during the COVID-19 pandemic.

80. Defendants Commissioners Maez and Brown, in their official capacities, acted in the interest of Archuleta County when they voted to approve the rate of pay through a bonus, and withheld the same county-wide bonus from any employees who took federally protected leave during the pandemic.

81. Plaintiff and others similarly situated suffered an adverse employment action when they were denied a county-wide $2,000 COVID bonus because they took leave under the FFCRA.

82. Defendants discriminated against Plaintiff and similarly situated employees who took leave under the FFCRA during the pandemic less favorably than other employees who did not take leave.

83. Defendants retaliated against Plaintiff and similarly situated employees by withholding the COVID Bonus from any employee because they engaged in the protected activity of taking leave under the FFCRA.

84. The foregoing conduct, as alleged, constitutes a willful violation of the FFCRA.

85. Plaintiff and similarly situated employees were, and continue to be, injured due to Defendant's violations of the FFCRA, for which they should be awarded damages.

## SECOND CLAIM FOR RELIEF
(Individual Claim for Retaliation in Violation of CADA and Title VII of the 1964 Civil Rights Act- C.R.S. §§ 24-34-401, *et seq.* and 42 U.S.C. §§ 2000e, *et seq*)

86. Plaintiff reasserts and realleges the allegations set forth in the above paragraphs.

87. Plaintiff engaged in protected opposition to Defendant County's unlawful employment practice of discriminating because of her gender by reporting instances of sexual harassment and a hostile work environment in the workplace.

88. Defendant County permitted the harasser to voluntarily resign with a generous pay out of the balance of his contract and without any disciplinary action within days of the reports filed by Plaintiff and others about his sexual harassment.

89. Defendant County, through its third-party investigator, proceeded with an investigation even after the harasser was no longer employed.

90. The investigation turned into an investigation of Plaintiff.

91. Plaintiff suffered an adverse employment action through a constructive discharge because after Plaintiff engaged in protected activity of opposing Defendants unlawful employment practice her working conditions became intolerable and her termination seemed inevitable, so she felt she had no other choice than to resign.

92. Plaintiff also suffered an adverse employment action when Defendants terminated Plaintiff's employment twice within 5 days after receiving her resignation.

93. Defendants terminated Plaintiff's employment shortly after Plaintiff engaged in opposition to the unlawful employment practice.

94. Plaintiff suffered adverse employment actions because of her opposition to Defendant County's unlawful employment practices.

95. Defendants conduct was intentional, willful, wanton, and malicious.

96. As a direct and proximate cause of Defendants unlawful retaliation, Plaintiff has suffered and continues to suffer injury and damage for which she is entitled to compensation.

**THIRD CLAIM FOR RELIEF**
(Individual Claim for Retaliation in Violation of the EPSLA Sections of the FFCRA and the FLSA - Division E §§ 5101-5111, 134 Stat. at 195-20129 and U.S.C. §215(a)(3))

97. Plaintiff reasserts and realleges the allegations set forth in the above paragraphs.

98. Plaintiff engaged in protected opposition to Defendant County's unlawful employment practice of discriminating because against her because she took EPSLA under the FFCRA in November 2020.

99. Plaintiff complained orally and in writing to her supervisor, County human resources, the County Administrator, and the Board of County Commissioners.

100. The County Administrator responded that the protected activity was inappropriate and directed Plaintiff's direct supervisor to "handle it."

101. Defendant County, through its third-party investigator, proceeded with an investigation of Plaintiff.

102. Plaintiff suffered an adverse employment action through a constructive discharge because after Plaintiff engaged in protected activity of opposing Defendants unlawful employment practice her working conditions became intolerable and her termination seemed inevitable, so she felt she had no other choice than to resign.

103. Plaintiff also suffered an adverse employment action when Defendants terminated Plaintiff's employment twice within 5 days after receiving her resignationPlaintiff suffered adverse

16

employment actions, in part, because of her opposition to Defendant's unlawful requirements to obtain the COVID Bonus.

104. By terminating Plaintiff's employment, Defendant intentionally and willfully retaliated against Plaintiff because she engaged in protected activity under the FFCRA and EPSLA.

105. Defendant County's conduct was intentional, willful, wanton, and malicious.

106. As a direct and proximate cause of Defendant County's unlawful retaliation, Plaintiff has suffered and continues to suffer injury and damage for which she is entitled to compensation pursuant to the CADA.

## VIII. PRAYER FOR RELIEF

WHEREFORE, as to the First Claim for Relief seeking class certification, and the Second Claim for Relief seeking collective certification, Plaintiff and all those similarly situated request that this Court grant to them judgment and damages resulting from Defendants' engaging in employment act, policies, and practices which violated the Fair Labor Standards Act and the Family Medical Leave Act as amended and expanded by the FFCRA, and Title VII of the 1964 Civil Rights Act, including an award against the Defendants for actual damages including the COVID Bonus, liquidated damages, penalties, punitive damages and compensatory damages, plus attorneys' fees and all such other relief as may be appropriate;

WHEREFORE, as to her individual Third Claim for Relief, Plaintiff requests that this Court find on her behalf and grant judgment in her favor and against Defendants as follows:

A. Compensation for the loss of all the income, benefits, and privileges incurred from on or about October 24, 2021, through the date of reinstatement or trial, as well as reasonable

front pay;

B. Other compensatory damages, including but not limited to compensation for damage to Plaintiff's reputation, emotional distress suffered because of Defendants' unlawful conduct, and all other noneconomic damages Plaintiff so incurred;

C. Prejudgment interest and post-judgment interest;

D. Liquidated damages;

E. Punitive damages;

F. Reasonable attorney fees incurred in this action, pursuant to federal and state law;

G. The costs of this action; and,

H. Any further relief provided by statute or law and that the Court deems just or equitable.

## VIII. JURY TRIAL DEMAND

Plaintiff requests a trial by jury.

Dated this 13th day of December 2022.

By: s/ David T. Albrechta
**David T. Albrechta, esq.**
**Eleni K. Albrechta, esq.**
ALBRECHTA & ALBRECHTA, LLC
530 Main Avenue, Suite D03
Durango, CO 81301
Telephone: (970) 422-3288
E-mail: david@albrechtalaw.com
eleni@albrechtalaw.com

**Tod J. Thompson, Attorney at Law**
810 Sycamore Street
Cincinnati, OH 45202
Telephone: (513) 322-4348
E-mail: tod@thompsonlaw.com

*Joseph F. Albrechta, esq.*
ALBRECHTA & COBLE, LTD.
2228 Hayes Avenue, Suite A
Fremont, OH 43420
Telephone: (419) 332-9999
E-mail: jalbrechta@lawyer-ac.com
jtreece@lawyer-ac.com

*Attorneys for Plaintiff Lacy Brown and others similarly situated.*